186 P.3d 1038 (2008)
STATE of Washington, Respondent,
v.
Octavio Gonzales FLORES, Petitioner.
No. 79135-0.
Supreme Court of Washington, En Banc.
Argued September 11, 2007.
Decided June 26, 2008.
*1040 Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Petitioner.
Karl F. Sloan, Okanogan County Prosecuting Attorney, Okanogan, WA, for Respondent.
Octavio Gonzales Flores, Connell, WA, Appearing Pro Se.
MADSEN, J.
¶ 1 Octavio Gonzales Flores challenges his convictions of six counts of unlawful delivery of a controlled substance, two counts of involving a minor in an unlawful drug transaction, and one count of possession with intent to deliver. He contends that insufficient evidence supports the convictions for involving a minor, that the State's use of a written statement by his wife violated his constitutional right to confrontation, and that the imposition of an exceptional sentence based on judge-made findings violated his constitutional right to a jury trial. The Court of Appeals affirmed the convictions and sentence after considering supplemental briefing on the applicability of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which were published while the case was on direct review.
¶ 2 We hold the offense of involving a minor in a drug transaction, former RCW 69.50.401(f) (1998), recodified as RCW 69.50.4015, does not encompass the act of merely allowing a minor to remain present during the transactions that took place at Flores'[1] residence. Accordingly, we reverse his convictions on those charges for insufficient evidence. But we affirm the other convictions, agreeing with the Court of Appeals that the confrontation clause violation was harmless. Finally, we hold the imposition of an exceptional sentence violates Flores' right to a jury trial, following Blakely, because the judge, not the jury, made the factual determination that the offense constitutes a major violation of the Uniform Controlled Substances Act (VUCSA), chapter 69.50 RCW, which was "more onerous than the typical offense." Former RCW 9.94A.535(2)(e) (2001).

FACTS
¶ 3 This case arises from a sting operation conducted by the North Central Washington Narcotics Task Force. In July, August, and September 2001, the task force conducted a series of controlled drug buys from Flores and his wife, Sandra, acting through a confidential informant. The confidential informant agreed to participate in lieu of charges.
¶ 4 The confidential informant did not speak Spanish. Flores did not speak English. *1041 Sandra translated during each of the drug transactions.
¶ 5 The first transaction occurred on July 26, 2001, at the orchard cabin where Flores and Sandra lived, together with Sandra's daughter, Jessica (born July 7, 1988). 1 Verbatim Report of Proceedings (VRP) at 108-09 (Feb. 7, 2002); 3 VRP at 449 (Feb. 11, 2002). The confidential informant encountered Sandra and Jessica sitting on a bench outside the cabin. He told Sandra he wanted "150." 1 VRP at 107. Sandra waved Flores over. They conversed in Spanish. The confidential informant gave Sandra the money, and Flores handed her a plastic baggie of 2.5 grams of cocaine. Sandra gave the plastic baggie to the informant. Neither Sandra nor Flores asked Jessica to leave.
¶ 6 Based on the evidence obtained at the first transaction, the police secured a court order that authorized the use of a "body wire." 1 VRP at 118, 126. All of the subsequent controlled buys were recorded via a wire worn by the confidential informant. In addition, aerial surveillance was used during the final controlled buy.
¶ 7 The second transaction occurred inside the cabin. Jessica was sitting on a couch in the living room. Flores either gave the drugs to Sandra in the bedroom, which was separate from the living room, or in the kitchen, which adjoined the living room.[2] According to the confidential informant, Jessica "was in the general area. It was a small cabin." 3 VRP at 457. He felt she "was aware of what was going on." Id. at 452. Flores did not ask her to leave.
¶ 8 The final controlled buy occurred on September 25, 2001. 2 VRP at 318 (Feb. 8, 2002). The confidential informant purchased 25.5 grams of cocaine in exchange for $1,425. The transaction took place in an open field. It was videotaped from a military surveillance plane. Police on the ground saw the confidential informant approach a truck, hand money inside, and receive a package of drugs from Flores.
¶ 9 After the transaction was complete, the police arrested Flores and then executed a search warrant at the orchard cabin. Sandra responded to police questioning and provided a written statement.
¶ 10 The police recovered 155 grams of cocaine from the premises, cash, including some of the recorded money used in the controlled buys, cutting agents, and packaging materials. Flores had $1,018 and seven bindles[3] of cocaine in his pants pocket when he was arrested. 4 VRP at 670, 720 (Feb. 12, 2002). Sandra had 11 bindles in her pants pocket. 2 VRP at 337.
¶ 11 The State charged Flores with six counts of unlawful delivery of a controlled substance[4] (counts I, III, V, VI, VII, VIII), two counts of involving a minor in drug dealing[5] (counts II and IV), and one count of unlawful possession with intent to deliver a controlled substance[6] (count IX). Clerk's Papers (CP) at 12-16.
¶ 12 Anticipating that Flores would invoke his spousal privilege to prevent Sandra from testifying, the State moved for admission of her out-of-court statements under ER 801(d)(2) (hearsay exemption for admission by party-opponent) and ER 804(b)(3) (hearsay exception for statements against penal interest). Over Flores' objection, the trial court ruled that Sandra's statements made during the controlled buys were admissible under ER 801(d)(2)(v), as statements by a co-conspirator in furtherance of the conspiracy. The trial court also ruled, again over Flores' objection, that Sandra's oral and written statements to the police were admissible under ER 804(b)(3), as statements against penal interest.
¶ 13 Accordingly, a written statement signed by Sandra was read into the record. In it, she admits participating in the drug transactions and inculpates her husband in the offenses. She also states her daughter *1042 was present during some of the drug transactions.
¶ 14 The State played the audio recordings of the drug buys for the jury. A translator read the English translation of the recordings into the record.
¶ 15 At the close of the State's case-in-chief, defense counsel moved for dismissal of the two counts for violation of former RCW 69.50.401(f) (involving a minor in an unlawful drug transaction). The trial court denied the motion.
¶ 16 Speaking through a translator, Flores testified. He conceded guilt as to counts eight and nine, relating to the September 25, 2001 controlled buy (which was captured on videotape). He admitted he handed cocaine to the confidential informant (count VIII), and he intended to give the seven bindles of cocaine found in his pocket to his wife (count IX). But he denied involvement in the other transactions.
¶ 17 On cross-examination, Flores admitted he was present when the confidential informant came to his house several times. He also admitted the voices on the audio recordings were his and his wife's.
¶ 18 A jury convicted Flores as charged. CP at 108-10.
¶ 19 The trial court sentenced Flores at the top of the standard range for five of the controlled substance offenses (120 months) and the two offenses for involving a minor (60 months), ordering they run concurrently. CP at 120. The trial court sentenced Flores to 60 months on the remaining two controlled substance offenses (counts VIII and IX) and ordered they run consecutively to the other offenses. Thus, the court sentenced Flores to an exceptional consecutive sentence of 180 months. CP at 127.
¶ 20 The court concluded the offenses were major VUCSAs, "more onerous than the typical offense." CP at 126. The court also concluded the multiple offense policy resulted in a sentence that was "clearly too lenient," based on Flores' offender score (18), and "some additional punishment should be imposed for allowing the child to be present" at two of the drug transactions. Id.
¶ 21 While Flores' case was on direct review, the United States Supreme Court issued its decisions in Crawford and Blakely. The Court of Appeals accepted supplemental briefing on the applicability of those decisions and affirmed the convictions. State v. Gonzales Flores, noted at 134 Wash.App. 1024, 2006 WL 2130668, 2006 Wash.App. LEXIS 1656. The court held that allowing a minor to be present during a drug transaction constitutes sufficient "involvement" to support a conviction for violation of RCW 69.50.4015. The court further held the trial court improperly admitted Sandra's out-of-court statements to police but the error was harmless. Finally, the trial court affirmed the exceptional sentence, holding the trial court did not engage in improper judicial fact-finding because the aggravating factor of a "major VUCSA" is based on facts found by the jury beyond a reasonable doubt, i.e., more than three convictions.

ANALYSIS
¶ 22 Flores challenges the sufficiency of the evidence in support of his convictions for involving a minor in a drug transaction. He argues that allowing a minor to remain present during an unlawful drug transaction does not, alone, constitute a violation of former RCW 69.50.401(f). We agree.
¶ 23 The resolution of this issue depends on this court's interpretation of former RCW 69.50.401(f). Statutory interpretation is a question of law subject to de novo review. State v. Hacheney, 160 Wash.2d 503, 512, 158 P.3d 1152 (2007).
¶ 24 Former RCW 69.50.401(f) provides:
It is unlawful to compensate, threaten, solicit, or in any other manner involve a person under the age of eighteen years in a transaction unlawfully to manufacture, sell, or deliver a controlled substance.
¶ 25 State v. Hollis, 93 Wash.App. 804, 970 P.2d 813 (1999), is the only decision addressing the statute's scope. Hollis involved the consolidated appeals of Mark Hollis and Lawrence Reddick. Id. at 808, 970 P.2d 813. Each man was convicted of involving a minor in a drug transaction, in violation of former RCW 69.50.401(f). An undercover officer approached *1043 Hollis on the street and said he wanted to purchase rock cocaine. Hollis said he would get it for him. Hollis then approached a minor and asked her to "deal to" the undercover officer. Id. at 809, 970 P.2d 813. The minor reluctantly agreed after Hollis found someone to "vouch" for the officer. Id.
¶ 26 In Reddick's case, an undercover officer approached two men on a downtown street and said he was looking for "a twenty," i.e., $20 worth of narcotics. Id. One of the men agreed to arrange the deal. Reddick approached the men arm-in-arm with his girl friend, a minor. After a brief exchange of signals, Reddick handed over a rock of cocaine, received a $20 bill, and then walked away with his girl friend.
¶ 27 Hollis and Reddick challenged their convictions, arguing the phrase "in any other manner involve" in former RCW 69.50.401(f) is unconstitutionally vague.
¶ 28 Because Hollis involved a void-for-vagueness challenge, the issue was whether, in light of the particular facts of the case, the statute defines the offense "with sufficient definiteness that ordinary people can understand what conduct is proscribed" and whether it provided "ascertainable standards of guilt to protect against arbitrary enforcement." Hollis, 93 Wash.App. at 810-11, 970 P.2d 813 (quoting State v. Myles, 127 Wash.2d 807, 812, 903 P.2d 979 (1995)).
¶ 29 The Court of Appeals rejected the constitutional challenge after considering the ordinary, dictionary meaning of the term "involve." The court stated:
A defendant violates RCW 69.50.401(f) if he or she compensates, threatens, solicits or in any other manner involves  i.e., surrounds, encloses, or draws in  a minor in an unlawful drug transaction, or obliges a minor to become associated with the drug transaction, e.g., by inviting or bringing a minor to a drug transaction, or allowing the minor to remain during a drug transaction.

Hollis, 93 Wash.App. at 812, 970 P.2d 813 (emphasis added).
¶ 30 The court ruled the statute sufficiently notified Reddick that the "acts of approaching the drug transaction arm-in-arm with a minor, . . . and allowing that minor to remain present during the drug transaction, thereby obliging her to become associated with the drug transaction" would constitute a violation of the statute. Id.
¶ 31 Flores urges us to disapprove of Hollis to the extent it suggests that allowing a minor to remain during a drug transaction, alone, constitutes a violation of former RCW 69.50.401(f). He contends the statute requires proof of the minor's active involvement in the transaction. He asks this court to apply the principles of accomplice liability and constructive possession in setting forth the standard of proof required.
¶ 32 As the Court of Appeals correctly observed, the statute does not require the minor's actual participation in the drug transaction: "the minor's culpability and actions  which are proscribed under other statutes  are inapposite for the purposes of the involving a minor in a drug transaction statute. Instead, the focus is on the defendant's affirmative acts." Hollis, 93 Wash. App. at 812, 970 P.2d 813. It is not necessary to establish the minor had any criminal intent. Accordingly, the analogy to accomplice liability and constructive possession is inapt.
¶ 33 However, we agree with Flores that the statute does not encompass the mere act of selling drugs in the presence of a minor. We recognize that exposing children to unlawful drug transactions is deplorable. However, our task is to decide whether the legislature intended to penalize that conduct when it enacted RCW 69.50.401(f). We conclude that it did not.
¶ 34 Three principles of statutory construction are germane to our analysis. First, a single word in a statute should not be read in isolation. Rather, the meaning of a word may be indicated or controlled by reference to associated words. State v. Roggenkamp, 153 Wash.2d 614, 623, 106 P.3d 196 (2005) (applying the doctrine of noscitur a sociis); State v. Van Woerden, 93 Wash.App. 110, 117, 967 P.2d 14 (1998). In applying this principle to determine the meaning of a word in a series, a court should "`"take into consideration *1044 the meaning naturally attaching to them from the context, and . . . adopt the sense of the words which best harmonizes with the context."'" Roggenkamp, 153 Wash.2d at 623, 106 P.3d 196 (quoting State v. Jackson, 137 Wash.2d 712, 729, 976 P.2d 1229 (1999) (quoting 50 AM.JUR. STAUTES § 247 (1944))).
¶ 35 A closely related and equally well-established principle of statutory interpretation is that specific words modify and restrict the meaning of general words when they occur in a sequence. State v. Roadhs, 71 Wash.2d 705, 708, 430 P.2d 586 (1967), superseded by statute as stated in State v. Wentz, 149 Wash.2d 342, 349, 68 P.3d 282 (2003) (applying the doctrine of ejusdem generis); Port of Seattle v. Dep't of Revenue, 101 Wash.App. 106, 113, 1 P.3d 607 (2000). "The ejusdem generis rule is generally applied to general and specific words clearly associated in the same sentence in a pattern such as `[specific], [specific], or [general]' or `[general], including [specific] and [specific].'" Sw. Wash. Chapter v. Pierce County, 100 Wash.2d 109, 116, 667 P.2d 1092 (1983) (alterations in original).
¶ 36 When viewing the phrase "or in any other manner involve" in light of the words immediately preceding it ("compensate, threaten, solicit"), it is clear the legislature did not intend to encompass the act of exposing a child to an unlawful drug transaction. Each of these words describes an act directed at the minor whereby the defendant brings, or attempts to bring, the minor into the transaction in some way.
¶ 37 It is significant that when the legislature wants to protect children from the harmful effects of exposure to criminal activity, it knows how to say so. For example, the legislature created a sentence enhancement for committing an act of domestic violence "within sight or sound" of a minor. RCW 9.94A.535(3)(h)(ii) (emphasis added). Similarly, the legislature enacted enhanced penalties for conducting drug transactions at places where minors are likely to be present, including schools, school buses, within 1,000 feet of a school bus stop, public parks, public housing projects, and public buses. RCW 69.50.435(1)(a)-(g); see State v. Jacobs, 154 Wash.2d 596, 601, 115 P.3d 281 (2005) (discussing mandatory penalties under former RCW 9.94A.533(6) (2003)).
¶ 38 Another fundamental principle of statutory interpretation is that when the legislature uses different words in statutes relating to a similar subject matter, it intends different meanings. Roggenkamp, 153 Wash.2d at 625, 106 P.3d 196. The legislature enacted a mandatory sentence enhancement for unlawfully manufacturing methamphetamine when a minor "was present in or upon the premises of manufacture." RCW 9.94A.605(2) (emphasis added). The purpose of the statute is to protect children from the risk of injury resulting from chemical toxicity, explosions, and fires, which are commonly associated with methamphetamine labs. Accordingly, it targets the act of exposing children to such risks of harm. In contrast, the plain language of former RCW 69.50.401(f), "compensate, threaten, solicit, or in any other manner involve," indicates a legislative purpose to protect children from being induced by adults to participate in unlawful drug transactions. Unlike RCW 9.94A.605(2), the statute targets conduct that actively seeks to engage the minor in unlawful activity. Had the legislature intended RCW 69.50.401(f) to encompass the act of merely exposing a minor to unlawful drug activity, it could have chosen language similar to that in RCW 9.94A.605(2), making it unlawful to conduct such activity in the presence of a minor.
¶ 39 RCW 69.50.401(f) is similar to federal laws that penalize adults who involve children in drug transactions. Similar to Washington's law, 21 U.S.C. § 861(a)(1), (2) makes it unlawful for any adult to "employ, hire, use, persuade, induce, entice, or coerce" a minor to either participate in a drug offense or "to assist in avoiding detection or apprehension" for a drug offense. And the federal sentencing guidelines provide a sentence enhancement for "using a minor to commit a crime," which is defined as "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S. Sentencing Guidelines Manual § 3B1.4 (2000); see also Anti-Drug Abuse Act of 1988, Pub.L. No. 100-690, § 6454, 102 Stat. 4181 (1988) (directing the sentencing *1045 commission to promulgate a sentencing enhancement for "involving" a minor in a drug offense).[7]
¶ 40 Construing these similar federal provisions, federal courts hold there is no need to prove the minor participated in any way, only that the defendant committed some affirmative act to involve the minor in the commission of the offense. United States v. Paine, 407 F.3d 958 (8th Cir.2005) (defendant brought his son along for "moral support"); United States v. Curry, 902 F.2d 912 (11th Cir.1990) (defendants asked nephew to drive them across the street to consummate a drug deal), cert. denied, 498 U.S. 1091, 111 S.Ct. 973 (1991). "The enhancement . . . focuses on whether the defendant used a minor in the commission of a crime, not whether the minor knew that he was being used to commit a crime." United States v. Ramsey, 237 F.3d 853, 861 (7th Cir.2001). The circuits differ as to the scope of conduct encompassed by the sentence enhancement but agree it applies only when the defendant commits an affirmative act to bring or attempt to bring the minor into the criminal enterprise. United States v. Taber, 497 F.3d 1177, 1180-81 (11th Cir.2007); United States v. Radermacher, 474 F.3d 999, 1002 (7th Cir.2007). Thus, a minor's mere presence is not sufficient to warrant the sentence enhancement. United States v. Jimenez, 300 F.3d 1166, 1170 (9th Cir.2002); United States v. Alarcon, 261 F.3d 416, 422 (5th Cir.2001); United States v. McDonald, 278 U.S.App. D.C. 156, 877 F.2d 91 (1989).
¶ 41 In McDonald, for instance, the State presented evidence that a minor fled during a police raid at the defendant's "stash house," the minor's personal possessions were found in the house, and he had $198 cash in his pocket when caught. Id. at 93. The court concluded the evidence was insufficient to support conviction of using a minor in a drug operation. The court reasoned the evidence "at best shows that [the minor] was present and able to observe." Id.
¶ 42 Using a child as a decoy may be sufficient evidence of "involving" a minor. For example, in United States v. Castro-Hernandez, 258 F.3d 1057 (9th Cir.2001), the court affirmed a sentence enhancement where the defendant attempted to cross into the United States from Mexico in a pickup truck with his young son at his side. Border officials found 46 kilograms of marijuana concealed in the truck. The court inferred the defendant used the boy as a decoy to reduce the likelihood of detection, and imposed a sentence enhancement. On review, the Ninth Circuit affirmed. The Court reasoned that Congress' directive to provide "`an appropriate sentence enhancement if the defendant involved a minor in the commission of the offense,' is broad enough to cover intentionally using a minor as an innocent decoy." Id. at 1060 (quoting the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103-322, § 140008(a)(2), 108 Stat. 1796, 2033 (1994)). The defendant admitted that he made a special stop at home to pick up his son after loading the drugs onto the truck. Ordinarily, the defendant's mother-in-law cared for the boy during the workday. The court concluded this evidence raised a reasonable inference that the defendant intentionally used the boy as a decoy.
¶ 43 However, the court observed, "the mere presence of a minor in the truck would not have been enough." Id. at 1060. In Alarcon, for example, the minor was a passenger in a truck containing a hidden compartment of cocaine. The defendant, who traveled closely behind in a rental car, was convicted of drug offenses and received a sentence enhancement based on the use of a minor as a decoy. The Fifth Circuit reversed, holding the evidence was insufficient to establish the defendant intentionally committed an affirmative act to involve the children. The court noted there was no evidence *1046 the defendant "made, wanted or suggested" the children ride in the truck. Alarcon, 261 F.3d at 422; see also United States v. Jimenez, 300 F.3d 1166 (9th Cir. 2002) (evidence insufficient to prove use of a minor where defendant's 11 year old son routinely accompanied her during border crossings to visit family in Mexico).
¶ 44 Even assuming the phrase "in any other manner involve" is susceptible to more than one reasonable interpretation, the rule of lenity requires this court to adopt the interpretation most favorable to the defendant. State v. Jacobs, 154 Wash.2d 596, 603, 115 P.3d 281 (2005). Accordingly, we reject the State's argument that "in any other manner involve," as found in former RCW 69.50.401(f), encompasses the act of allowing a minor to remain during a drug transaction, absent evidence of an intent for the minor to play some role in the transaction.
¶ 45 Unlike in Hollis, Flores' actions, in relation to the minor, were purely passive. He did not bring her to the site, he did not have any contact with her, physical or verbal, and there is no indication she was not free to leave. His failure to require her to leave was not an affirmative act that is encompassed by the statute.
¶ 46 Nor is there sufficient evidence to establish that Flores used Jessica as a decoy. Of the five drug transactions that occurred at the cabin, Jessica was present only twice. Two of the transactions occurred off the premises. There is no evidence that Flores intended to use Jessica as a cover to avoid detection of the drug transactions. Rather, it appears her presence was a matter of happenstance, not design. Most of the transactions occurred off the premises, outside the minor's presence. On the two occasions that drug transactions occurred at the orchard cabin in Jessica's presence, the confidential informant had arrived at the residence on his own: he was not invited there by Flores.
¶ 47 Because there is insufficient evidence to infer that Flores knowingly and purposefully brought or attempted to bring his stepdaughter into the drug buys, we reverse his convictions for involving a minor in a drug transaction.
¶ 48 Flores next contends the trial court committed reversible error by admitting out-of-court statements made by his wife in violation of his constitutional right to confrontation. The State concedes error but argues it was harmless.
¶ 49 The trial court divided Sandra's out-of-court statements into two categories: (1) statements she made during the drug transactions and (2) statements she made to the police following her arrest. The court admitted the first category of statements under ER 801(d)(2)(v), as statements in furtherance of a conspiracy, and the second category under ER 804(b)(3), as statements against penal interest.[8] Flores challenges the admission of only the second category of statements.[9]
¶ 50 Sandra's oral and written statements to the police following her arrest fall squarely within the "core" class of testimonial statements. See Crawford, 541 U.S. at 51, 124 S.Ct. 1354. Thus, the Court of Appeals correctly accepted the State's concession of error. Gonzales Flores, 2006 WL 2130668, 2006 Wash.App. LEXIS 1656.
¶ 51 A confrontation clause violation is subject to harmless error analysis. State v. Watt, 160 Wash.2d 626, 635, 160 P.3d 640 (2007). In evaluating whether the error is harmless, this court applies the "`overwhelming untainted evidence'" test. State v. Davis, 154 Wash.2d 291, 305, 111 P.3d 844 (2005) (quoting State v. Smith, 148 Wash.2d 122, 139, 59 P.3d 74 (2002)), aff'd on other grounds by 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Under that test, when the properly admitted evidence is so overwhelming *1047 as to necessarily lead to a finding of guilt, the error is harmless. Id.
¶ 52 Evidence that is merely cumulative of overwhelming untainted evidence is harmless. State v. Nist, 77 Wash.2d 227, 236, 461 P.2d 322 (1969); see also Dennis J. Sweeney, An Analysis of Harmless Error in Washington: A Principled Process, 31 GONZ. L.REV. 277, 319 (1995) ("Regardless of the announced standard of review for harmless error, Washington has a long history of ruling error harmless if the evidence admitted or excluded was merely cumulative.").
¶ 53 Flores contends the Crawford error is not harmless because Sandra's statements "were the only corroborating evidence of the [confidential informant's] testimony that Octavio was involved in the activities charged in Counts I through VII of the Information." RAP 13.4(a) Pet. for Discretionary Review at 13. On the contrary, as detailed in the recitation of facts, the State presented overwhelming evidence corroborating the confidential informant's testimony, including audio recordings, video recordings, drugs, money, and the defendant's own admissions. The tainted evidence is merely cumulative of this overwhelming untainted evidence. Thus, we hold the improper admission of Sandra's out-of-court statements was harmless beyond a reasonable doubt.
¶ 54 Finally, Flores challenges his exceptional sentence. The imposition of a consecutive sentence under former RCW 9.94A.589(1)(a) violates the right to a jury even when the sentence for each offense is within the standard range, if the judge, not the jury, makes the predicate findings in support of the consecutive sentence. In re Pers. Restraint of VanDelft, 158 Wash.2d 731, 147 P.3d 573 (2006).
¶ 55 Here, the trial court sentenced Flores within the standard range for each offense but ordered him to serve the last two counts consecutively to the first seven counts, under former RCW 9.94A.589(1)(a). The court found that two aggravating factors supported a consecutive sentence: former RCW 9.94A.535(2)(e)(i)-(vi) ("major VUCSA") and former RCW 9.94A.535(2)(i) ("clearly too lenient").[10] CP at 126.
¶ 56 The existence of an aggravating factor is a factual question, not a question of law. State v. Suleiman, 158 Wash.2d 280, 292-93, 143 P.3d 795 (2006). Thus, unless an aggravating factor is established solely by the jury verdict or the defendant's stipulation, it cannot be used to support an exceptional sentence.
¶ 57 It is well established that the "clearly too lenient" factor cannot support an exceptional sentence when found by the judge. VanDelft, 158 Wash.2d at 734, 147 P.3d 573; Suleiman, 158 Wash.2d at 287, 143 P.3d 795; State v. Hughes, 154 Wash.2d 118, 140, 110 P.3d 192 (2005), overruled on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). The State concedes the invalidity of the "clearly too lenient" factor in this case, because the judge, not the jury, made this factual determination.
¶ 58 However, we have not yet addressed whether an exceptional sentence based on the aggravating factor of a "major VUCSA" can withstand constitutional scrutiny, following Blakely.
¶ 59 An exceptional sentence may withstand such a challenge when based on facts necessarily found by the jury. For example, an exceptional sentence based on a finding of "sexual motivation" may be affirmed because the statute expressly requires the finding to be made by a jury beyond a reasonable doubt. See Hughes, 154 Wash.2d at 134, 110 P.3d 192 ("RCW 9.94A.535(2)(f), listing sexual motivation as an aggravating factor, also is still valid because RCW 9.94A.835 requires a jury to find beyond a reasonable doubt that sexual motivation was present.").
¶ 60 On the other hand, when the trial court is left to draw any inferences from the facts in determining the existence of an aggravating *1048 factor, the aggravating factor is not a valid ground for an exceptional sentence. Thus, in State v. Hagar, 158 Wash.2d 369, 144 P.3d 298 (2006), this court held that an exceptional sentence based on a "major economic offense" violates the right to a jury even when a defendant stipulates to facts that establish one of the statutorily enumerated factual predicates for this aggravating factor, i.e., that the offense involved multiple incidents or multiple victims.
¶ 61 At the time Flores was sentenced, a trial court could impose an exceptional sentence if
[t]he current offense was a major violation of the Uniform Controlled Substances Act, chapter 69.50 RCW (VUCSA), related to trafficking in controlled substances, which was more onerous than the typical offense of its statutory definition: The presence of ANY of the following may identify a current offense as a major VUCSA:
(i) The current offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so.
Former RCW 9.94A.535(2)(e) (emphasis added).
¶ 62 The State argues the jury's verdict sufficiently supports a finding of a "major VUCSA," under former RCW 9.94A.535(2)(e)(i), because the jury convicted Flores of more than three unlawful drug transactions.
¶ 63 We recently rejected a similar argument addressing the aggravating factor of a "`major economic offense.'" Hagar, 158 Wash.2d at 374, 144 P.3d 298. Under former RCW 9.94A.535(2)(d), a court could impose an exceptional sentence if
[t]he current offense was a major economic offense or series of offenses, so identified by a consideration of any of the following factors:
(i) The current offense involved multiple victims or multiple incidents per victim.
¶ 64 In Hagar, the defendant pleaded guilty to three counts of first degree theft. As part of his plea agreement, he stipulated to facts sufficient to prove he committed 4 counts of second degree theft and 20 counts of first degree theft in an embezzlement scheme. Hagar, 158 Wash.2d at 371, 144 P.3d 298. Based on his stipulations, the trial court imposed an exceptional sentence, finding the crimes constituted a "major economic offense" in that they involved multiple incidents per victim.[11]Id. at 372, 144 P.3d 298.
¶ 65 We concluded the trial court
"engaged in improper Blakely fact finding when it found the crimes constituted a "major economic offense."
"Hagar stipulated certain facts but did not stipulate that the crimes constitute a `major economic offense.' The trial court imposed an exceptional sentence of 30 months, . . . based on its finding that Hagar had committed a major economic offense. Hagar's sentence is in violation of Blakely because the exceptional sentence was predicated on an unstipulated fact that was not found by a jury beyond a reasonable doubt."
Id. at 374, 144 P.3d 298.
¶ 66 This case is indistinguishable from Hagar. The jury convicted Flores of seven drug transactions. Like the "major economic offense" aggravator, the "major VUCSA" aggravator allows, but does not compel, an exceptional sentence when the defendant commits multiple violations ("[t]he presence of ANY of the following may identify a current offense as a major VUCSA"). Former RCW 9.94A.535(2)(e) (emphasis added). Thus, the trial court had to make factual determinations in order to justify the exceptional sentence. In particular, the trial court had to infer the offenses were "more onerous than the typical offense." Id. In drawing that inference  an inference the State correctly observes is sufficiently supported (but not compelled) by the jury verdict  the trial court made a factual determination that must be made by a jury. Compare State v. Cubias, 155 Wash.2d 549, 120 P.3d 929 (2005) (finding no Blakely violation where the jury *1049 verdict necessarily implies the defendant committed multiple serious violent offenses, triggering the imposition of a mandatory consecutive sentence). The "statutory maximum" is the maximum that a judge may impose "without any additional findings." Suleiman, 158 Wash.2d at 289, 143 P.3d 795 (emphasis added) (quoting Blakely, 542 U.S. at 303-04, 124 S.Ct. 2531). Because the jury verdict does not necessarily imply Flores' multiple offenses were a "major VUCSA," the exceptional sentence is based on a finding made by the judge, not the jury.
¶ 67 Even assuming the court relied solely on the jury's factual finding that Flores committed more than three controlled substance offenses to infer the crime was a "major VUCSA," the exceptional sentence would be invalid.[12] Trial courts lack the authority to deviate from legislatively prescribed exceptional sentencing procedures. State v. Pillatos, 159 Wash.2d 459, 150 P.3d 1130 (2007). At the time Flores was tried, the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW, required the judge, not the jury, to find the existence of this statutory aggravating factor, according to the preponderance of the evidence standard of proof. In re Pers. Restraint of Hall, 163 Wash.2d 346, 359-361, 181 P.3d 799 (2008); see also Hughes, 154 Wash.2d at 148, 110 P.3d 192 (the former SRA "explicitly directs the trial court to make the necessary factual findings and does not include any provision allowing a jury to make those determinations during trial, during a separate sentencing phase, or on remand." (emphasis added)). The trial court could neither delegate its fact-finding duty to the jury nor impose a more demanding standard of proof. Hall, 163 Wash.2d at 361, 181 P.3d 799. Even if the record showed that Flores' jury expressly found, beyond a reasonable doubt, that he committed a "major VUCSA," that finding could not support the imposition of an exceptional sentence under then-existing law. See id. (concluding "it was procedurally impossible" for a jury to make the requisite factual findings in support of an exceptional sentence); State v. Womac, 160 Wash.2d 643, 663, 160 P.3d 40 (2007) (same).

CONCLUSION
¶ 68 We hold that allowing a minor to remain present during a drug transaction is not among the acts encompassed by former RCW 69.50.401(f) (involving a minor in a drug transaction). The statute requires evidence that the defendant committed some act, directed at the minor, to bring or attempt to bring the minor into the transaction. We reverse Flores' convictions on counts II and IV for insufficient evidence.
¶ 69 We further hold the confrontation clause violation was harmless and affirm the convictions on counts I, III, V, VI, VII, VIII and IX.
¶ 70 Finally, we hold the court erred in imposing an exceptional sentence because the trial court, not the jury, made the factual determination that the offenses are "a major VUCSA." We reverse and remand for further proceedings consistent with this opinion.
*1050 WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, JAMES M. JOHNSON, TOM CHAMBERS, JJ., and BOBBE J. BRIDGE, J. Pro Tem.
SANDERS, J. (dissenting).
¶ 71 The court is tasked to determine whether admission of statements made by defendant's wife, Sandra, to the police violated the defendant's, Octavio Gonzales Flores, confrontation rights. We must then determine whether violation of Flores's confrontation right requires reversal of his resulting conviction. The majority properly holds Sandra's statements to the police were "squarely within the `core' class of testimonial statements." Majority at 1046 (quoting Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). However, the majority also holds admitting Flores's wife's statements, although unconstitutional, was harmless notwithstanding the statements implicated him in the drug transaction. I disagree. These statements were significant evidence against Flores. I would hold the admission of these statements was not harmless and remand the case for a new trial.
¶ 72 "[C]onstitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless." State v. Watt, 160 Wash.2d 626, 635, 160 P.3d 640 (2007). To prove an error is harmless, the State must prove the error was "trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." State v. Britton, 27 Wash.2d 336, 341, 178 P.2d 341 (1947). Moreover the court cannot know "the probabilities any evidence may have upon the minds of jurors." State v. Robinson, 24 Wash.2d 909, 917, 167 P.2d 986 (1946). When the court reweighs the evidence used by the jury, it makes "a tacit admission that an appellate court is necessarily engaging in fact-finding and thereby invading the province of the jury." Dennis J. Sweeney, An Analysis of Harmless Error in Washington: A Principled Process, 31 GONZ. L.REV. 277, 279 (1995).
¶ 73 Here the unconstitutional evidence under consideration were statements by Flores's wife implicating Flores in a drug transaction. Statements by one spouse implicating another spouse are incredibly damning evidence and when unconstitutionally received in evidence, reversal is required. A jury is unlikely to perceive a wife as biased against her husband, and therefore her testimony is likely to bear heavily in the mind of a juror. Such powerful evidence is hardly "trivial" or "merely academic," and its admission is not harmless.
¶ 74 Apparently ignoring the power of a wife's statements implicating her husband, the majority claims the unconstitutional admission of the statements was harmless because the evidence is cumulative. Majority at 1047. This is an error. Sandra's statements were the only evidence corroborating the informant's testimony that Flores was involved in the drug transactions. Through her statements she corroborated the informant's claim that Flores was involved and therefore implicated her husband in the drug transaction.
¶ 75 Contrary to the majority's assertion, the other evidence listed did not place Flores in the midst of the drug transactions. Flores was convicted based on three different drug transactions. There was no recording of the first transaction, instead only the testimony of the informant. The second and third transactions were audio-recorded but mention only Sandra by name. Verbatim Report of Proceedings at 309. The other voices, including Flores's, are only disembodied voices requiring identification by the listener. It was only the informant's testimony, and Sandra's corroboration, which identified Flores as a participant in the transaction.
¶ 76 The majority also claims corroboration was established by "video recordings, drugs, money, and the defendant's own admissions." Majority at 1047. However, there was no video recording of two of the three transactions giving rise to the conviction. Id. at 1040-41. Nor was there evidence tying Flores to the drugs or money from the first two transactions. Lastly, Flores's "admissions" related only to the third transaction and came when he took the *1051 stand, after his wife's statements incriminating him of the crimes had been read into evidence. This can hardly be considered corroborative evidence of Flores's involvement, at least for the first two transactions.
¶ 77 The majority today allows a man to be convicted of seven felonies based in part on unconstitutional statements received in evidence from his wife, statements that implicated him. It allows this because it holds statements by a wife implicating her husband in a criminal act are trivial or academic and would not affect the jury's decision making. The majority also holds the admission of the unconstitutional statements were cumulative; however it fails to identify other evidence which corroborates the informant's testimony that Flores was involved in all three transactions. We cannot place ourselves in the minds of the jury. Robinson, 24 Wash.2d at 917, 167 P.2d 986.
¶ 78 I dissent.
OWENS, J. (dissenting).
Involving a Minor in a Drug Transaction
¶ 79 The majority concludes that a parent who deals drugs in his living room in front of his child does not in any manner involve the child in the drug deal. Because this holding is contrary to the plain meaning of former RCW 69.50.401(f) (1998), recodified as RCW 69.50.4015, and to common sense, I dissent.
¶ 80 Former RCW 69.50.401(f) states:
It is unlawful to compensate, threaten, solicit, or in any other manner involve a person under the age of eighteen years in a transaction unlawfully to manufacture, sell, or deliver a controlled substance.
Proper analysis of the issue presented by this case requires a two-part inquiry: whether Gonzales's[1] 13-year-old stepdaughter was "in any . . . manner involve[d]" in his drug transactions and if so, whether it was Gonzales who involved her in the transactions.
Was Gonzales's 13-Year-Old Stepdaughter "Involved" in his Drug Transactions?
¶ 81 The word "involve" has a wide range of meaning. As the majority recognizes, the plain and ordinary meaning[2] of "involve" is "to enfold or envelop so as to encumber . . . to draw in as a participant . . . to oblige to become associated (as in an unpleasant situation)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1191 (2002). Furthermore, in the statute, the phrase "in any other manner" modifies "involve." By including "in any other manner," the legislature demonstrated its intent to give "involve" its full range of meaning.
¶ 82 Under the ordinary definition, a person need not actively participate in order to be involved: Two people involve a co-worker in their politics by arguing over candidates in the same small office; a passenger is involved in a car accident; parents involve their child in domestic violence if they physically abuse each other in front of the child.
¶ 83 Using the plain meaning of "involve," a child is "involved" in a drug transaction by being a member of the party conducting the transaction, by being in a confined space with the transaction, by participating in the transaction, or by being inextricably proximate to and aware of the transaction. In such situations, the child is "enveloped and enfolded" by the potential dangers of the transaction in two meaningful ways. First, the child bears risks inherent in the transaction-she is an intimate of one of the parties and a known witness and thus a potential target if violence ensues. Second, the child is encumbered by the psychological effects of exposure to illegal drug activity. Under the proper interpretation of former RCW 69.50.401(f), there is sufficient evidence to show that Gonzales's teenage stepdaughter was involved "in some manner" in his drug transactions. See Verbatim Report of Proceedings (VRP) (Feb. 11, 2002) at 452, 482-87.
¶ 84 Contrary to the majority's assertions, this reading of "in any other manner involve" *1052 does not criminalize drug transactions in the mere presence of children. A child may be merely present when hundreds of feet away from the drug dealacross a busy street or in a crowded mall; a child further may be "within sight or sound," former RCW 9.94A.535(3)(h)(ii) (2001), of a transaction even though separated from the transaction by a substantial barrier that shields the child from the particular risks and influences of the transaction. "Involvement" requires something more than mere presence; the child must be enveloped in and encumbered by the transaction, as Gonzales's stepdaughter was here.
¶ 85 The majority's reliance on federal law to support its constricted interpretation of "involve" is misplaced. The majority cites 21 U.S.C. § 861 and case law interpreting the federal provision. Majority at 1044. The federal statute reads in part:
It shall be unlawful for any person at least eighteen years of age to knowingly and intentionally
(1) employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age to violate any provision of this subchapter or subchapter II of this chapter.
21 U.S.C. § 861(a).
¶ 86 A comparison of the federal statute with former RCW 69.50.401(f) supports a broader interpretation of the state statute. The federal provision enumerates a comprehensive list of specific conduct prohibited, instead of employing a general phrase such as "in any other manner involve." The legislature chose not to use the language of 21 U.S.C. § 861, high-profile legislation passed just the year before, indicating that it intended to proscribe more behaviors than the federal provision. The federal statute also requires the intent to make the child an active participant in criminal behavior, while former RCW 69.50.401(f) has no such requirement. The majority's holding in this case is perhaps accurate under 21 U.S.C. § 861, but not under the Washington provision at issue in this case.[3]
Did Gonzales Involve his Stepdaughter in his Drug Transactions?
¶ 87 The majority argues that Gonzales did not affirmatively act to involve his stepdaughter because he did not "knowingly and purposefully" bring or attempt to bring her into the drug transaction.[4] Majority at 1046. However, affirmative acts are usually contrasted with omissions or failures to act. State v. Chester, 82 Wash.App. 422, 426, 918 P.2d 514 (1996), aff'd, 133 Wash.2d 15, 940 P.2d 1374 (1997); Zamora v. Mobil Oil Corp., 104 Wash.2d 199, 209, 704 P.2d 584 (1985). Gonzales's choice to transact without first dismissing his daughter was an act, not a failure to act.
¶ 88 Gonzales's teenage stepdaughter would not have been involved in his transactions but for his choice to transact in her immediate presence. Gonzales created the situation by choosing the time and place of the transaction. He was not forced to transact when he was approached by a buyer at home. He knew that his stepdaughter was in the room; she did not arrive unexpectedly outside of his control.[5] He chose to sell drugs then and there; he did not simply fail to stop the sale.
¶ 89 The majority emphasizes the 13-year-old stepdaughter's failure to leave instead of holding the drug dealer accountable for his actions. Majority at 1046. She may have been free to leave the situation, but her *1053 stepfather had control over whether to sell cocaine when and where he did. The child's failure to leave does not relieve Gonzales of culpability for involving her in his drug transactions.
Conclusion
¶ 90 We should not recognize a viable defense to the crime of involving a minor in a drug transaction for a parent who says, "I don't involve my kids in my drug business; I only sell when they're with me at home." Instead, we should give "involve" its full and ordinary meaning and give effect to the legislature's words "in any other manner."
¶ 91 The evidence here is sufficient for a rational trier of fact to reasonably conclude that Gonzales's stepdaughter was involved in Gonzales's drug transactions and that Gonzales involved her by not dismissing her or leaving himself before commencing his deals. I would affirm Gonzales's conviction for involving his stepdaughter in two of his drug transactions.
Blakely
¶ 92 Gonzales alleges that the trial court violated the rule in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), by imposing an exceptional sentence based on the aggravating factor of a major violation of the Uniform Controlled Substances Act (VUCSA), chapter 69.50 RCW. Former RCW 9.94A.535(2)(e). The majority agrees with Gonzales, holding that the trial judge made an impermissible finding of fact by treating the jury's findings of more than three VUCSAs as a major VUCSA. In my view, when the jury found more than three VUCSAs, it found a major VUCSA by definition. The sentencing judge thus made no findings of fact. Therefore, I dissent.
¶ 93 The statute under which the trial judge sentenced Gonzales states, in part:
The current offense was a major violation of the Uniform Controlled Substances Act, chapter 69.50 RCW (VUCSA), related to trafficking in controlled substances, which was more onerous than the typical offense of its statutory definition: The presence of ANY of the following may identify a current offense as a major VUCSA:
(i) The current offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so.
Former RCW 9.94A.535(2)(e).
¶ 94 The majority's reading of the word "may" treats the word as though it points out an arguable conclusion that creates a factual question (e.g., "I may be taller than he is," begging the question, "Am I taller?"). However, in the context of the statute in question, "may" has a permissive connotation (e.g., "You may proceed," informing the listener that conditions are adequate to move forward). The statute lists six ways in which a major VUCSA can be established, former RCW 9.94A.535(2)(e)(i)-(vi), and it emphasizes that any one of the factors is independently sufficient to constitute a major VUCSA. In other words, if the jury finds three or more VUCSAs under former RCW 9.94A.535(2)(e)(i), the trial court can move forward by using the "major VUCSA" aggravating factor in its discretionary sentencing determination. "[W]hether facts alleged and found are sufficiently substantial and compelling to warrant imposing an exceptional sentence," is a legal judgment which a sentencing judge may properly make under Blakely. State v. Hughes, 154 Wash.2d 118, 137, 110 P.3d 192 (2005), abrogated on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006).
¶ 95 The trial judge did not infer that Gonzales's VUCSAs were "`more onerous than . . . typical,'" as characterized by the majority. Majority at 1040 (quoting former RCW 9.94A.535(2)(e)). Rather, the legislature stipulated that a defendant's offense is "more onerous than . . . typical" when a jury finds three or more separate VUCSAs. The jury found more than three VUCSAs here.
¶ 96 The majority asserts that this case is "indistinguishable" from State v. Hagar, 158 Wash.2d 369, 144 P.3d 298 (2006). Majority at 1048. In Hagar, the defendant stipulated to facts sufficient to establish that the crime involved multiple victims and multiple offenses per victim. The court imposed an exceptional sentence based on the court's finding of the existence of the "major economic *1054 offense" aggravating factor. See former RCW 9.94A.535(2)(d). This court overturned Hagar's sentence, holding, "Hagar stipulated [to] certain facts but did not stipulate that the crimes constituted a `major economic offense.' . . . Hagar's sentence is in violation of Blakely because the exceptional sentence was predicated on an unstipulated fact that was not found by a jury beyond a reasonable doubt." Hagar, 158 Wash.2d at 374, 144 P.3d 298.
¶ 97 The differences in the language of the two statutes at issue distinguish this case from Hagar. Former RCW 9.94A.535(2)(d), the statute at issue in Hagar, states, in part:
The current offense was a major economic offense or series of offenses, so identified by a consideration of any of the following factors:
(i) The current offense involved multiple victims or multiple incidents per victim.
As discussed above, former RCW 9.94A.535(2)(e) explicitly makes the finding of three or more VUCSAs a "major VUCSA." Conversely, former RCW 9.94A.535(2)(d) states that any combination of numerous predicate factors could be considered to determine whether an aggravating factor exists. Unlike the "major VUCSA" aggravating factor, the aggravating factor of a "major economic offense" does not have a set of facts which, if found, are sufficient by law to constitute the "major economic offense" aggravating factor. As such, under the statute in Hagar, the jury was required to find that the crimes constitute a "major economic offense" as described by former RCW 9.94A.535(2)(d),[6] but no additional fact-finding is necessary here.
¶ 98 The exceptional sentence imposed by the sentencing judge is valid despite the majority's contention that it was procedurally impossible for the court to submit the aggravating facts to the jury during the trial. The majority cites In re Personal Restraint of Hall, 163 Wash.2d at 359-361, 181 P.3d 799 (2008), and State v. Womac, 160 Wash.2d 643, 663, 160 P.3d 40 (2007), for the proposition that the Sentencing Reform Act of 1981, chapter 9.94A RCW, at the time of Gonzales's trial required the trial judge to find facts supporting an aggravating factor by a preponderance of the evidence. Majority at 1049. That proposition does not apply to this case.
¶ 99 It is true that prior to 2005 there was no procedure allowing the trial court to submit to the jury questions of fact regarding aggravating factors. But here the jury did not need to find additional facts to support the aggravating factor. All the facts constituting the aggravating factor of a "major VUCSA" were necessarily found by the jury beyond a reasonable doubt as drug offense counts in Gonzales's criminal trial.
¶ 100 The trial court did not make a finding of fact when it exercised its discretion to award Gonzales an exceptional sentence based on the jury's findings of more than three separate violations of the Uniform Controlled Substances Act. The jury's findings alone qualified the offenses as a "major VUCSA" under former RCW 9.94A.535(2)(e). The trial court appropriately exercised judicial discretion by assigning the exceptional sentence based on the "major VUCSA" aggravating factor, and it committed no Blakely violation.
¶ 101 For the foregoing reasons, I respectfully dissent from the majority opinion.
I CONCUR: MARY E. FAIRHURST, J.
NOTES
[1] Gonzales Flores' surname consists of a patronym and a matronym. We address him by his matronymic surname, according to his apparent preference. See Statement on Plea of Guilty, Clerk's Papers at 127 (signature block); Chicago Manual of Style, 8.14, at 315 (15th ed.2003) ("persons with [Spanish surnames] are usually referred to by both family names but sometimes by only one, according to their own preference").
[2] At trial, the confidential informant gave two different accounts of this event.
[3] A "bindle" refers to a package containing a single dose of cocaine.
[4] Former RCW 69.50.401(a)(1)(i).
[5] Former RCW 69.50.401(f).
[6] Former RCW 69.50.401(a)(1)(i).
[7] Although no legislative history exists explaining our legislature's intent in promulgating RCW 69.50.401(f), the legislative history of the federal provisions indicates Congress was responding to the problem of adults conscripting children to carry out drug transactions or drawing them into dangerous situations by using them as decoys. United States v. Ramsey, 237 F.3d 853, 858 (7th Cir.2001) (citing 103d Cong., 139 Cong. Rec. S1,5638 (1993)). It is reasonable to infer our legislature was similarly concerned with punishing the exploitation of children by adults who commit drug offenses.
[8] Flores fails to recognize the statements he challenges were admitted under the hearsay exception for statements against penal interest, rather than as statements by a coconspirator. He correctly, but inaptly, argues the statements were not made in furtherance of a conspiracy.
[9] The admission of Sandra's statements during the drug transactions does not implicate the confrontation clause because they are nontestimonial. See Crawford, 541 U.S. at 56, 124 S.Ct. 1354. (observing that statements in furtherance of a conspiracy are nontestimonial).
[10] Former RCW 9.94A.535(2)(i) provides: "The operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010."
[11] The court also found that the stipulated facts established the existence of the other criteria for a "major economic offense."
[12] In fact, the record indicates the number of convictions, alone, was not the court's major consideration in finding a "major VUCSA" and imposing an exceptional sentence. In affirming [Flores'] exceptional sentence, the Court of Appeals stated, "the record indicates the court would have imposed the exceptional sentence based only on [the major VUCSA violation predicated on multiple transactions]." Gonzales Flores, 2006 WL 2130668, at *5, 2006 Wash.App. LEXIS 1656, at *15. Not every aggravating factor need be valid in order for a reviewing court to uphold an exceptional sentence. Hughes, 154 Wash.2d at 134, 110 P.3d 192 (citing State v. Jackson, 150 Wash.2d 251, 276, 76 P.3d 217 (2003)). If a reviewing court is satisfied the trial court would have imposed the same sentence based on an aggravating factor that withstands appellate scrutiny, it may uphold the exceptional sentence. Id. However, the record indicates the court's primary reason for imposing the exceptional sentence was its view that "the defendant should receive some additional punishment for having a child present during the transactions." VRP (Feb. 27, 2002) at 5. The trial court reluctantly agreed these offenses must be sentenced concurrently with the associated drug transactions as "same criminal conduct." But the trial court relied on the "clearly too lenient" aggravator as a means to justify an exceptional sentence. CP at 126. Moreover, the trial court did not state it would have imposed the same sentence in consideration of the number of drug transactions alone. On this record, a reviewing court cannot fairly conclude the sentence would have been the same even if the trial court had considered the sole arguably proper factor (major VUCSA based on more than three transactions).
[1] We address Octavio Gonzales Flores by his patronymic surname.
[2] "We give words in a statute their plain and ordinary meaning unless a contrary intent is evidenced in the statute." C.J.C. v. Corp. of Catholic Bishop, 138 Wash.2d 699, 708, 985 P.2d 262 (1999).
[3] The majority also cites the United States Sentencing Guidelines Manual section 3B1.4 (2000) and case law interpreting it. Majority at 1044-45. The two provisions are not comparable. Section 3B1.4 states, "If the defendant used or attempted to use a person less than eighteen years of age. . . ." "Use" has a very different meaning from "involve." See Webster's, supra, at 2523-24 (defining "use" in part as "to carry out a purpose or action by means of: make instrumental to an end or process: apply to advantage").
[4] The majority relies on the language of 21 U.S.C. § 861 that the dealer intend to make the child a participant in illegal behavior.
[5] The majority also inaccurately states that Gonzales "did not have any contact with her, physical or verbal." Majority at 1046. The record shows that Gonzales and the child's mother conversed with her throughout the transactions. VRP (Feb. 11, 2002) at 483-84, 487.
[6] The majority also argues that former RCW 9.94A.535(2)(d) is indistinguishable from former RCW 9.94A.535(2)(e) because they both "allow[], but do[ ] not compel, an exceptional sentence when the defendant commits multiple violations." Majority at 1048. However, imposition of an exceptional sentence is never compelled; it is always a matter of judicial discretion and thus not a meaningful test of the two statutes' similarity. Hughes, 154 Wash.2d at 137, 110 P.3d 192.