IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32637-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RIGOBERTO G. SANCHEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Rigoberto Sanchez appeals his 84-month exceptional sentence for a single delivery of a controlled substance, which a jury found to be a major "violation of the Uniform Controlled Substances Act" (VUCSA), chapter 69.50 RCW. The State had given notice of its intent to seek an exceptional sentence, stating in error that it would seek consecutive sentencing. Mr. Sanchez argues that the State is bound by its representation and that the trial court erred in treating the notice as a basis for the State's later request that the court impose a sentence outside the standard range, allowing the notice to be amended, and proceeding to conduct a jury trial on the "major VUCSA." He also challenges the trial court's giving of a jury instruction that he claims omits an element of the major VUCSA aggravator, and the court's imposition of a $3,000 methamphetamine cleanup assessment fine that he contends the court mistakenly believed was mandatory.

Mr. Sanchez argued in the trial court that the cleanup assessment fine was not mandatory as applied to him, and demonstrates that the court failed to recognize its discretion when it imposed the fine. We find no other error or abuse of discretion and remand for the limited purpose of resentencing for legal financial obligations.

FACTS AND PROCEDURAL BACKGROUND

Rigoberto Sanchez was arrested immediately following the conduct of a controlled buy of 412.69 grams of high quality methamphetamine—almost a pound's worth—which the informant had purchased for $7,600. Police stopped Mr. Sanchez and his codefendant, Jose Rivera, after they left the buyer's Clarkston home. In a search incident to the arrest, the officers found the $7,600 in pre-recorded bills in Mr. Sanchez's coat pocket.

The State charged Mr. Sanchez with one count of delivery of a controlled substance (methamphetamine) in violation of RCW 69.50.401(2)(b) and on the same day, filed a notice of its intent to seek an exceptional sentence. Although Mr. Sanchez was only charged with a single offense, the notice stated that the State "intends to seek an exceptional sentence in the above matter, and will argue for the sentences *on each felony conviction in this case to be ordered consecutive to each other*." Clerk's Papers (CP) at 13 (emphasis added). The notice disclosed that the basis for the State's request for an exceptional sentence "may be found in RCW 9.94A.535(3)(e)" and that it alleged "that the offense charged against the Defendant was a major violation of the Uniform

2

Controlled Substance Act, chapter 69.50 RCW, relating to trafficking in controlled substances, which was more onerous that [sic] the typical offense of its statutory definition." *Id.*

Mr. Sanchez's trial lawyer recognized the anomaly in the State's notice of intent to seek an exceptional sentence and recommended a "quick plea" strategy, to be acted upon before the State could amend its notice. At a hearing on March 24, Mr. Sanchez's lawyer informed the court that he had been unable to reach an agreement with the State, doubted that one could be reached, and that Mr. Sanchez wanted to change his plea to guilty.

Before the court could accept the plea, the following exchange occurred:

> [PROSECUTOR]:—And just for my curiosity will he be pleading guilty to the charge and the admitting to or acknowledging the, ah, special allegation or will—will—cause if not, we'll still need a jury trial for the allegation—the special allegation regarding the exceptional sentence basis.
> [DEFENSE COUNSEL]: We're pleading guilty to the (inaudible). If I may approach I have (inaudible)?
> THE JUDGE: Yes, Counsel.
> [PROSECUTOR]: And, again, the State still has the right to put on their case if he's not waiving jury as to the, ah, an exceptional sentence basis. The State still has the right pursuant to the notice we filed to put on the exceptional sentence basis before a jury. He can—he can always plead to the information, but he can't necessarily short-circuit the State's right to seek an exceptional sentence by doing so.
> THE JUDGE: Looks like I will be having a hearing on that doesn't it.

Report of Proceedings (RP) at 17-18.

3

Arrangements were made to transport Mr. Sanchez to court that day for entry of

the plea. When he arrived at court, the process of changing his plea proceeded, and the

prosecutor again raised the aggravating factor:

> [PROSECUTOR]: Last, I want to make sure that Mr. Sanchez understands that the State is proceeding with the, ah, aggravating factor regarding major violation of the violation of the [U]niform [C]ontrolled [S]ubstance [A]ct and specifically, the, ah—ah, statement on plea references that the Court can impose an exceptional sentence, ah, if the State proves beyond a reasonable doubt and has given notice, ah—ah, if we have proven beyond a reasonable doubt the factual basis for an exceptional sentence to the satisfaction of a jury or a judge if he waives a jury.
> [DEFENSE COUNSEL]: What the Prosecutor has stated—
> [PROSECUTOR]:—And the State does intend to seek that—
> [DEFENSE COUNSEL]:—was that it filed a document which states, ah, that it intends to seek a sentence *which is outside the standard range*. Do you recall us talking about that in jail?
> MR. SANCHEZ: (Inaudible).
> [DEFENSE COUNSEL]: Is that a yes?
> THE JUDGE: Pull the mike closer to your client, please.
> . . . .
> [DEFENSE COUNSEL]: You need to make sure that you speak up—
> MR. SANCHEZ:—Yes—
> [DEFENSE COUNSEL]:—nice and loud, Mr. Sanchez, because everything that's going on here today is being recorded.
> MR. SANCHEZ: Yes, Your Honor.
> [DEFENSE COUNSEL]: We need to make sure that they have a good record. So, are you aware that the State has, ah, filed a document that states that they intend to seek a sentence *outside of the standard range*?
> MR. SANCHEZ: Yes.
> [DEFENSE COUNSEL]: All right.

RP at 20-22 (emphasis added).

Mr. Sanchez then entered a *Newton*[1] plea. Because his lawyer indicated that Mr. Sanchez might also waive a jury trial, the trial court postponed setting a date for trial on the aggravating circumstance until April 14.

At the April 14 scheduling hearing, Mr. Sanchez objected to empaneling a jury and requested immediate sentencing. The State responded that it was not abandoning its request for an exceptional sentence, and therefore the case should not proceed to sentencing unless Mr. Sanchez waived his right to a jury trial under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). It is apparent from the transcript that the lawyers were aware of some dispute over whether Mr. Sanchez's entry of a plea entitled him to immediate sentencing and both requested the opportunity to file briefing, which the court granted.

Defense briefing filed thereafter argued that Mr. Sanchez had not received adequate notice of the State's intent to seek an exceptional sentence because the "requested sentence was for consecutive sentencing," and consecutive sentences cannot be imposed where a single offense is charged. CP at 44. Upon receiving the defense brief, the State immediately filed an "Amended Notice of Intent to Seek Exceptional Sentence," which stated the State "will argue for the sentences on a felony conviction in

---

[1] *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976) (following *N. Carolina v. Alford*, 400 U.S. 25, 36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) in holding that a defendant may take advantage of a plea opportunity without acknowledging guilt).

this case to be ordered in excess of the standard range." CP at 41. At the subsequent hearing, the prosecutor said he realized the court might strike the amended notice, which "certainly was after [Mr. Sanchez's] plea," but that it filed the amended notice "as a precautionary measure" to "make sure that everybody understood . . . that the State was still requesting an exceptional sentence." RP at 53. Mr. Sanchez objected to the State's amendment.

After hearing arguments from the parties, the trial court determined the State had provided Mr. Sanchez with sufficient notice of its intent to seek an exceptional sentence. It expressed its view that the State had the right to file an amended notice, analogizing it to the State's right to amend its information to conform to evidence up until the time the matter is submitted to the finder of fact. It added that "clearly, the defendant had notice of the intent to seek exceptional sentence." RP at 57.

At the trial on the aggravator, the State's proposed instructions included one that was based on the pattern instruction provided at 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* 300.14, at 711 (3d ed. 2008) (WPIC). Mr. Sanchez did not propose any instructions. At the conclusion of the State's evidence, the defense asked that the court modify the WPIC 300.14-based instruction to describe the offense under consideration by the jury as "the current offense" rather than simply "the offense." RP at 155. The court granted the requested modification.

6

At trial, the jury heard testimony from detectives Bryson Aase and Jonathan Coe. Detective Aase was acting undercover and was inside the buyer's house at the time of the controlled buy. He testified that he had been a narcotics detective for six years, and had never seen a larger single purchase of methamphetamine. Detective Coe, who was in charge of the operation, similarly said that in the nearly three decades he had been a police officer, he had never seen a single case involving delivery of more methamphetamine. He testified that an average drug user would use .25 grams of methamphetamine per day, while an extremely heavy user would use 1.5 grams at the most.

Both detectives testified that this particular drug deal involved unusually large shards, or crystal formations, of methamphetamine, which indicates sellers involved at a higher level of the distribution chain. Detective Coe explained that this form of methamphetamine is generally more pure because it has not been cut down and potentially mixed/diluted with other ingredients by dealers lower on the distribution chain. Detective Coe testified the 412.69 grams involved in the current transaction could easily be doubled when cut with inactive ingredients by the time it was sold on the street, and therefore its street value could be as much as $82,000.

At the conclusion of the evidence, the jury answered yes to the question, "Was the crime a major violation of the Uniform Controlled Substance Act?" CP at 76. Based on the jury's finding, the court imposed an exceptional sentence of 84 months.

7

The court also imposed what was identified on the State's proposed judgment and sentence as a $3,000 "Mandatory 'Methamphetamine Clean Up' Assessment," citing RCW 69.50.401(a)(1)(ii) as the basis for the fine, over Mr. Sanchez's objection that the fine was not mandatory. CP at 93. The trial court accepted the State's argument that the fine *was* mandatory. Mr. Sanchez appeals.

### ANALYSIS

On appeal, Mr. Sanchez contends (1) he received insufficient notice of the State's intent to seek an exceptional sentence based on a major VUCSA, (2) the instructions given to the jury relieved the State of its burden to prove all of the elements of the aggravating circumstance, and (3) the trial court abused its discretion by imposing a $3,000 cleanup assessment fine, which is not required under RCW 69.50.401. We address the issues in turn.[2]

*I.  Adequacy of notice of intent to seek an exceptional sentence*

Mr. Sanchez makes three related assignments of error arising out of the trial court's decision to conduct a trial on the major VUCSA aggravator over his objections. He argues first, that the State's notice of its intent to seek an exceptional sentence did not support its request for a sentence outside the standard range; second, that the trial court

---

[2] The State argued in its response brief that Mr. Sanchez's notice of appeal was untimely under RAP 5.2(a) and should be summarily dismissed. A commissioner of this court heard arguments on this issue and determined the notice of appeal was timely. *See* Comm'r's Ruling (June 26, 2015).

8

erred in allowing the State to file an amended notice; and third, that the trial court erred in permitting the State's request for an aggravator to proceed to a jury trial. For reasons explained below, we conclude that the original notice was sufficient, the amendment was untimely under RCW 9.94A.537(1), and that Mr. Sanchez offers no basis for challenging the conduct of the trial other than his failed argument that the initial notice was insufficient.

Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, a trial court may impose a sentence outside the standard range if it finds "that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. The statute provides an exclusive list of permissible aggravating circumstances, many of which must be found by a jury. RCW 9.94A.535(2), (3); *see also State v. Pillatos*, 159 Wn.2d 459, 468, 150 P.3d 1130 (2007). The aggravating circumstance applied in this case—that "[t]he current offense was a major violation of the Uniform Controlled Substances Act"—is among those that must be found by a jury. RCW 9.94A.535(3)(e).

The state and federal constitutions both require that a defendant be given "adequate notice of the nature and cause of the accusation in order to allow him or her to prepare a defense in response to charges that he or she committed a crime." *State v. Siers*, 174 Wn.2d 269, 277, 274 P.3d 358 (2012) (citing WASH. CONST. art. I, § 22; U.S.

9

CONST. amend. VI).[3] "[T]o allow the defendant to 'mount an adequate defense' against

an aggravating circumstance listed in RCW 9.94A.535(3)," these constitutional

provisions require that a defendant "receive notice prior to the proceeding in which the

State seeks to prove those circumstances to a jury." *Siers*, 174 Wn.2d at 277 (quoting

*State v. Schaffer*, 120 Wn.2d 616, 620, 845 P.2d 281 (1995)).

> RCW 9.94A.537(1) effectuates these constitutional protections by providing that
>
> [a]t any time prior to trial or entry of the guilty plea if substantial rights of
> the defendant are not prejudiced, the state may give notice that it is seeking
> a sentence above the standard sentencing range. The notice shall state
> aggravating circumstances upon which the requested sentence will be
> based.

This statute "permits the imposition of an exceptional sentence *only* when the State has

given notice, prior to trial," or in this case, prior to entry of the guilty plea, "that it intends

to seek a sentence above the standard sentencing range." *State v. Womac*, 160 Wn.2d

643, 663, 160 P.3d 40 (2007).

Because the State's amended notice was filed after Mr. Sanchez entered his

*Newton* plea, it cannot satisfy RCW 9.94A.537(1)'s requirements, nor does it comport

with due process. The critical issue is whether the State's initial notice was adequate,

---

[3] *See* WASH. CONST. art. I, § 22 ("In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him."); U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation.").

10

statutorily and constitutionally, to inform Mr. Sanchez of its intent to seek an exceptional sentence outside the standard range.

Allegations of constitutional violations are reviewed de novo. *Siers*, 174 Wn.2d at 273-74. Interpretation of a statute is a question of law, and is also subject to de novo review. *Id.*; *State v. Gonzales Flores*, 164 Wn.2d 1, 10, 186 P.3d 1038 (2008). Finally, "[w]hether the sentencing court had authority to empanel a jury to find aggravating circumstances under RCW 9.94A.537 is a question of law," which this court likewise reviews de novo. *State v. Murawski*, 142 Wn. App. 278, 289, 173 P.3d 994 (2007).

*Adequacy of the State's initial notice*

While RCW 9.94A.537(1) requires the State to provide notice that it will seek an exceptional sentence and to set forth the aggravating factors alleged, it "does not mandate the manner in which that notice is to be given." *Siers*, 174 Wn.2d at 277; *State v. Bobenhouse*, 143 Wn. App. 315, 331, 177 P.3d 209 (2008) (because "no particular form of notice is specified by the statute," the prosecutor's letter to defense counsel notifying him of the State's intent to seek an exceptional sentence based on RCW 9.94A.535(2)(c) satisfied RCW 9.94A.537's notice requirement).

The State characterizes its initial notice as including "extraneous" information that was not required by RCW 9.94A.535(2)(c) or due process. Resp't's Br. at 15. Notwithstanding its inclusion of unnecessary language, it argues that the notice contained all of the information required by RCW 9.94A.537(1): it both advised Mr. Sanchez that

11

the State would seek an exceptional sentence and identified the specific aggravating

factor the State intended to prove, including its statutory basis. It argues that the notice

enabled Mr. Sanchez to prepare a defense and therefore complied with constitutional

notice requirements.

The notice, which was captioned "Notice of Intent to Seek Exceptional Sentence"

states, in its entirety:

> The above-named Defendant is hereby given notice that the State
> intends to seek an exceptional sentence in the above matter, and will argue
> for the sentences on each felony conviction in this case to be ordered
> consecutive to each other. The basis for the State's argument may be found
> in RCW 9.94A.535(3)(e). The State hereby alleges that the offense charged
> against the Defendant was a major violation of the Uniform Controlled
> Substance Act, chapter 69.50 RCW, relating to trafficking in controlled
> substances, which was more onerous that [sic] the typical offence of its
> statutory definition.

CP at 13. We agree with the State that the notice contained all of the information that is

required by statute to be conveyed. It stated both that "the State intends to seek an

exceptional sentence . . . *and* will argue for the sentences on each felony conviction in

this case to be ordered consecutive to each other." *Id.* (emphasis added). It made these

statements in the context of a charge where the only exceptional sentence available would

be a sentence outside the standard range. The notice was, at worst, carelessly prepared.

For that reason, and because the statute does not prohibit surplusage in the notice, there

was no statutory violation.

Turning to Mr. Sanchez's constitutionally-based challenge to the initial notice, if the surplusage was affirmatively misleading, it could have due process implications. In the analogous context of notice provided by a charging document, "[w]hen a surplus allegation varies between the charging document and proof at trial, the variance requires reversal if it prejudices the accused either by misleading him in making his defense or by exposing him to double jeopardy." *State v. Eaton*, 164 Wn.2d 461, 470, 191 P.3d 1270 (2008) (citing *State v. Tvedt*, 153 Wn.2d 705, 718, 107 P.3d 728 (2005)); *State v. Stritmatter*, 102 Wn.2d 516, 524, 688 P.2d 499 (1984). Mr. Sanchez argues that he was prejudiced because the State's request for consecutive sentencing would be inconsequential to the sentence he faced in light of the single charge, and that he entered his guilty plea believing he would not be at risk of an exceptional sentence. He also contends that because a judge, not a jury, may find facts supporting consecutive sentences, *State v. Vance*, 168 Wn.2d 754, 762, 230 P.3d 1055 (2010), he believed he would be making sentencing arguments to the trial court, rather than facing a jury trial on an aggravating factor.

Mr. Sanchez cannot make a persuasive case of prejudice, however. A reasonable reader, knowing that the only exceptional sentence the State could seek would be a sentence outside the standard range, would recognize its reference to seeking consecutive sentencing as probable error. For that reason, and considering the exchange on the record before Mr. Sanchez entered his plea, in which there were specific references to the State

13

seeking a "sentence outside the standard range," Mr. Sanchez's claim that he was misled is a dubious one. CP at 88.

And even under the circumstances he claims existed, he could have, but did not, seek to withdraw his guilty plea. Due process requires that a guilty plea may be accepted only upon a showing that the accused understands the nature of the charge and enters the plea intelligently and voluntarily. *State v. Robinson*, 172 Wn.2d 783, 790, 263 P.3d 1233 (2011). "A defendant does not knowingly plead guilty when he bases that plea on misinformation regarding sentencing consequences." *Id.* (citing *State v. Miller*, 110 Wn.2d 528, 531, 756 P.2d 122 (1988), *overruled on other grounds by State v. Barber*, 170 Wn.2d 854, 248 P.3d 494 (2011)). Under CrR 4.2(f), "[t]he court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." If Mr. Sanchez misunderstood the State's intention, he had a right to withdraw his guilty plea.

Accordingly, either Mr. Sanchez did not misunderstand the State's intention and was engaged in sandbagging,[4] or he did misunderstand and could have withdrawn his plea. Whichever is the case, his right to due process was not violated.

---

[4] In *State v. Kjorsvik*, our Supreme Court paraphrased Professor Wayne LeFave's description of "sandbagging" in the analogous context of a defective charging document, describing it as "a potential defense practice wherein the defendant recognizes a defect in the charging document but forgoes raising it before trial when a successful objection would usually result only in an amendment." 117 Wn.2d 93, 103, 812 P.2d 86 (1991) (citing 2 W. LAFAVE & J. ISRAEL, CRIMINAL PROCEDURE § 19.2, at 442 & n.36 (1984)).

14

The State's true intention was manifest in plenty of time for Mr. Sanchez to prepare a defense to trial on the aggravator. The State promptly (if ineffectively) filed an amended notice on April 21, 2014, upon receiving Mr. Sanchez's brief pointing out the anomalous language in its initial notice. While Mr. Sanchez argues conclusorily that he was denied the opportunity to prepare a defense against the aggravating circumstance, the record shows otherwise. He was informed from the time of the initial notice that the State would rely on RCW 9.94A.535(3)(e) and contend that his offense was a major VUCSA. He was aware by April 21, 2014, at the latest, that the State was requesting that the court impose a sentence outside the standard range, and trial did not take place until May 30, 2014. Mr. Sanchez never requested a continuance.

The State's amended notice of intent to seek an exceptional sentence did not comply with RCW 9.94A.537. But its initial notice complied with the statute, and Mr. Sanchez fails to demonstrate that the State's erroneous reference to seeking exceptional consecutive sentences—surplusage, under the applicable statute—resulted in a violation of his right to due process. The trial court did not err in proceeding to trial on the major VUCSA.

### II. Jury instruction

Mr. Sanchez next argues that instructions given during the jury trial on the exceptional sentence were constitutionally deficient because they relieved the State of its burden to prove all of the elements of the aggravating circumstance beyond a reasonable

doubt. His argument arises from RCW 9.94A.535(3)(e)'s arguably ambiguous statement that an aggravating circumstance exists if "[t]he current offense was a major violation of the Uniform Controlled Substances Act . . . which was more onerous than the typical offense of its statutory definition," from which one can argue that the aggravating circumstance requires the presence of two elements (a "major violation" and an "offense . . . more onerous than the typical offense") or only one (a "major violation," which means that the offense was "more onerous than the typical offense").

Mr. Sanchez contends that the statute should be construed to require proof of both "a major violation" and an "offense . . . more onerous than the typical offense of its statutory definition." Yet the trial court's Instruction No. 6 to the jury, which Mr. Sanchez challenges for the first time on appeal, did not require the jury to find the two asserted elements, stating instead:

> A major trafficking violation of the Uniform Controlled Substances Act is one which is more onerous than the typical offense. The presence of any of the following factors may identify this offense as a major trafficking violation:
>
>> Whether the current offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use; or
>>
>> Whether the circumstances of the current offense reveal that the Defendant occupied a high position in the drug distribution hierarchy.

CP at 73.

16

Resolution of this assigned error requires interpretation of RCW 9.94A.535(3)(e).

A court's primary objective when interpreting a statute "is to ascertain and carry out the

legislature's intent." *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242,

88 P.3d 375 (2004). If the statute's meaning is plain on its face, "the court must give

effect to that plain meaning as an expression of legislative intent." *Id.* The plain

meaning of a statute is discerned "from the ordinary meaning of the language at issue, the

context of the statute in which that provision is found, related provisions, and the

statutory scheme as a whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007

(2009).

If a statutory provision is ambiguous, i.e., is subject to more than one reasonable

interpretation, the court may "'resort to statutory construction, legislative history, and

relevant case law for assistance in determining legislative intent.'" *Anthis v. Copland*,

173 Wn.2d 752, 756, 270 P.3d 574 (2012) (quoting *Christensen v. Ellsworth*, 162 Wn.2d

365, 373, 173 P.3d 228 (2007)). Interpretation of a statute is a question of law, reviewed

de novo. *Flores*, 164 Wn.2d at 10.

In its entirety, RCW 9.94A.535(3)(e) states that an exceptional sentence above the

standard range may be imposed if:

> The current offense was a major violation of the Uniform Controlled
> Substances Act, chapter 69.50 RCW (VUCSA), related to trafficking in
> controlled substances, which was more onerous than the typical offense of
> its statutory definition: The presence of ANY of the following may identify
> a current offense as a major VUCSA:

17

(i) The current offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so;

(ii) The current offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use;

(iii) The current offense involved the manufacture of controlled substances for use by other parties;

(iv) The circumstances of the current offense reveal the offender to have occupied a high position in the drug distribution hierarchy;

(v) The current offense involved a high degree of sophistication or planning, occurred over a lengthy period of time, or involved a broad geographic area of disbursement; or

(vi) The offender used his or her position or status to facilitate the commission of the current offense, including positions of trust, confidence or fiduciary responsibility (e.g., pharmacist, physician, or other medical professional).

RCW 9.94A.535(3)(e). It is well settled that if any one of the six factors listed in RCW 9.94A.535(3)(e) is present, an exceptional sentence is justified. *State v. Solberg*, 122 Wn.2d 688, 707, 861 P.2d 460 (1993); *State v. Hrycenko*, 85 Wn. App. 543, 548, 933 P.2d 435 (1997), *abrogated in part on other grounds by Flores*, 164 Wn.2d 1.

The ambiguity in the statute created by the phrase "which was more onerous than the offense of its statutory definition," was addressed by this court in Division One's pre-SRA decision in *Hrycenko*, which held that the phrase "more onerous than typical" contained in RCW 9.94A.535(3)(e),[5] "does no more than amplify the required conclusion that an offense is 'major.'" 85 Wn. App. at 545.

---

[5] At the time of Mr. Hrycenko's crime, the major VUSCA aggravator was provided by former RCW 9.94A.390(2)(d) (1989). RCW 9.94A.535(3)(e) is nearly

18

It therefore rejected the defendants' argument that the State must prove both that the offense was a major violation and that it was more onerous than typical, stating, "It is not a two-step inquiry." *Id.* at 548. The court explained:

> Although somewhat inartfully stated, the Legislature has provided that if a crime involves circumstances such as the presence of quantities larger than for personal use or a broad geographic area, then this conduct constitutes an atypical, egregious crime warranting an exceptional sentence. Essentially, the phrase "more onerous than typical" is not an additional requirement, rather it is a restatement of the requirement of a "major violation."

*Id.*

And interpreting the predecessor statute to RCW 9.94A.535(3)(e),[6] our Supreme Court held in *State v. Solberg*, 122 Wn.2d at 707, that "a properly supported finding of any one of the statutory aggravating circumstances"—by which it was referring to the enumerated circumstances now set forth in RCW 9.94A.535(3)(e)(i) through (vi)—"may elevate a drug offense to a 'major violation' which allows a trial court, in its discretion, to impose an exceptional sentence." Only the three-member dissent in *Solberg* viewed showing that the current offense was more onerous than typical as an additional element that must be proved. *Id.* at 708 (Madsen, J., dissenting). Under *Solberg*, then, nothing

---

identical to language that has been in effect since 1986. LAWS OF 1986, Ch. 257, § 27(2)(d). RCW 9.94A.390 was recodified as RCW 9.94A.535 by LAWS OF 2001, ch. 10, § 6.

[6] Here, too, the predecessor statute at issue was former RCW 9.94A.390(2)(d) (1989).

else is required beyond a finding of a "major violation" of the Uniform Controlled Substances Act.

In promulgating WPIC 300.14, the Washington Pattern Instructions Committee has noted there are three possible constructions of its ambiguous introductory language, the first and third being consistent with the outcomes in *Hrycenko* and *Solberg*. The second construction it identifies is that advocated by Mr. Sanchez:

> Under the second possible construction, the state is required to prove two facts: (1) a major violation of the Uniform Controlled Substances Act; and (2) that the violation is "more onerous than the typical offense of its statutory classification." This construction prevents the latter phrase from being superfluous by interpreting the "which" as meaning "that." Like the first construction, this treats subdivisions (i) through (vi) as illustrative examples.

WPIC 300.14, at 713 (3rd ed. 2008).

Mr. Sanchez urges this court to adopt this construction but makes no effort to distinguish *Hrycenko* or *Solberg*. To adopt the second construction would be contrary to the implicit construction of the statute by the Supreme Court majority in *Solberg* and contrary to Division One's well-reasoned decision in *Hrycenko*. We also note that as a matter of common sense, it would seem that a "major" VUSCA is necessarily "more onerous than the typical offense," and vice versa.

Mr. Sanchez nonetheless claims his construction of the statute is supported by *Flores*, 164 Wn.2d 1, perhaps taking encouragement from an unpublished opinion in which this court viewed *Flores* as having been abrogated by *Hrycenko* on this point.

20

*State v. Lopez*, 149 Wn. App. 1033, 2009 WL 756292, at *6 (2009).[7] But no other cases have recognized any such abrogation and on reexamination, we conclude that the *Lopez* court's reading of *Flores* was wrong.

Mr. Sanchez focuses on the statements in *Flores* that

[T]he trial court had to make factual determinations in order to justify the exceptional sentence. In particular, the trial court had to infer the offenses were "more onerous than the typical offense."

164 Wn.2d at 22. But a closer reading of *Flores* reveals the court implicitly rejected a reading of the statute that requires proof of both a "major violation" and that the offense was "more onerous than typical."

*Flores* was a case that was tried before *Blakely*, and the issue on appeal, which followed *Blakely*, was whether the exceptional sentence imposed on Flores violated his right to a jury trial because the judge, rather than a jury, had determined that his offense was a major VUCSA. *Flores*, 164 Wn.2d at 5. The State argued that because the jury convicted the defendant of more than three unlawful drug transactions, its verdict sufficiently supported a finding of a major VUCSA under former RCW 9.94A.535(2)(e)(i) (identifying, as a qualifying circumstance, a current offense that

---

[7] If Mr. Sanchez *was* encouraged by *Lopez*, he properly refrains from citing it. *See* GR 14.1 (unpublished decisions may not be cited as authority). We mention the unpublished opinion not as authority, but to prevent it from misleading parties in the future.

21

involves at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so). *Id.* at 21.

In rejecting the State's argument, the *Flores* court emphasized that whether an offense constitutes a major VUCSA is a factual determination. *Id.* at 22. It explained that like the "major economic offense" aggravator, "the 'major VUCSA' aggravator allows, but does not compel, an exceptional sentence when the defendant commits multiple violations." *Id.* (internal quotation marks omitted) (quoting former RCW 9.94A.535(2)(e)) ("[t]he presence of ANY of the following *may* identify a current offense as a major VUCSA"). Because the jury's verdict did not "necessarily imply" the defendant's multiple offenses constituted a major VUCSA, the court held the exceptional sentence was based on a finding made by the judge, not the jury, and therefore violated his right to a jury trial under *Blakely*. *Id.* at 23.

The *Flores* court treated a finding that an offense was a major VUCSA as synonymous with a finding that it was "more onerous than the typical offense." In the same paragraph, the court states both that

> to justify the exceptional sentence . . . the trial court had to infer the offenses were "more onerous than the typical offense"

and

> Because the jury verdict does not necessarily imply Flores' multiple offenses were a "major VUCSA," the exceptional sentence is based on a finding made by the judge, not the jury.

22

*Id.* at 22-23. And in the next paragraph, the court again referred to the single essential

factual finding being that "the crime was a 'major VUCSA.'" *Id.* at 23.

*Hrycenko* and *Solberg* remain good law and compel the conclusion that the jury

was properly instructed.

### III. Methamphetamine cleanup assessment fine

Finally, Mr. Sanchez contends the trial court abused its discretion in imposing a

methamphetamine cleanup assessment fine based on an erroneous belief that it was

required by the statute.

RCW 69.50.401(2)(b) provides that upon conviction for the manufacture, delivery,

or possession of amphetamine with intent to manufacture or deliver, a person "may be

imprisoned for not more than ten years, or (i) fined not more than twenty-five thousand

dollars if the crime involved less than two kilograms of the drug, or both such

imprisonment and fine." Elsewhere, the provision states:

> Three thousand dollars of the fine may not be suspended. As collected, the
> first three thousand dollars of the fine must be deposited with the law
> enforcement agency having responsibility for cleanup of laboratories, sites,
> or substances used in the manufacture of the methamphetamine, including
> its salts, isomers, and salts of isomers. The fine moneys deposited with that
> law enforcement agency must be used for such clean-up cost.

RCW 69.50.401(2)(b).

In *State v. Wood*, 117 Wn. App. 207, 212, 70 P.3d 151 (2003), this court rejected

the State's argument that an earlier version of this statute, which contained nearly

23

identical language, required a mandatory $3,000 cleanup fine for defendants who have been convicted of crimes involving methamphetamine. Noting that the language provides that "[i]f a fine is imposed, the first $3,000 collected must go to the drug site cleanup fund," the court held that "the statute authorizing a contribution to the drug cleanup fund is discretionary with the trial court." *Id.*

Although the State concedes on appeal that the fine is in fact discretionary,[8] it contended otherwise at the time of sentencing. In reviewing the proposed judgment and sentence at the time of sentencing, Mr. Sanchez's lawyer specifically objected to the fine on the basis that it was not mandatory, even if his understanding of the statute was somewhat misplaced. He stated:

> I've noticed under the section for costs and assessments that there's been a $3,000 methamphetamine cleanup assessment. *My reading of that is that it's not a mandatory thing.* I think it's mandatory if there's been a commission of a, ah—a meth lab or manufacture of it. This is not that type of offense. We heard ample testimony that manufacture of this particular drug has gone south of the border. I don't think it's appropriate. Not only that, but per the RCWs, the cost of that are supposed to go to actual cleanup. I am in fear that if that was imposed, it would just sit in the, ah, funds someplace and never be used.

RP at 203 (emphasis added).

The prosecutor responded that "the law provides that any, ah, dealing or manufacturing related offense, ah, the $3,000 cleanup fee is—is, ah, mandatory . . . I

---

[8] The State argues on appeal that any error was not preserved under RAP 2.5(a) but the record reveals otherwise.

don't have the specific statute, but it states that the Court shall impose, ah, the fine." *Id.*
The court agreed with the prosecutor, stating, "I think that's accurate." RP at 204.

The trial court incorrectly assumed that the fine was required by statute. It thereby abused its discretion, and the case will be remanded for resentencing as to any fine.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Sanchez raises one: he claims that he and his lawyer believed the State would not be seeking an exceptional sentence based on the parties' "plea agreement." SAG at 1. He further contends that by recognizing the amended notice of intent to seek an exceptional sentence as effective and proceeding with a jury trial on the aggravator, the judge who accepted the plea "rendered defense Counsel ineffective in plea negotiations." *Id.*

For support, Mr. Sanchez cites federal cases addressing the State's obligation under the Sixth Amendment of the United States Constitution and due process principles to negotiate and communicate fairly with defendants during the plea bargain process. *See, e.g., Missouri v. Frye*, 132 S. Ct. 1399, 1406, 182 L. Ed. 2d 379 (2012) (holding that the constitutional right to counsel applies during the plea bargain process). As the State points out, however, there was no plea agreement in this case.

Mr. Sanchez nevertheless claims he entered his *Newton* plea under the assumption that, based on the State's original notice of intent to seek an exceptional sentence, he would be able to avoid an exceptional sentence. *Id.* at 2. This argument has been

25

adequately advanced by his appellate lawyer and we will not reexamine it. *See* RAP

10.10(a) (purpose of a SAG is to permit an appellant "to identify and discuss those

matters" which the defendant/appellant "believes have not been adequately addressed by

the brief filed by the defendant[/appellant]'s counsel.")

We reverse the methamphetamine cleanup assessment fine and remand for

resentencing as to any fine. We otherwise affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, C.J.

WE CONCUR:

Brown, J.*

Fearing, J.

---

* Judge Stephen M. Brown was a member of the Court of Appeals at the time argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

26